**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

**Mary Ellen Simonson** (State Bar No. 009298)
Direct Dial: 602.262.5317
Direct Fax: 602.734.3868
Email: msimonson@lrrc.com
**Bruce E Samuels** (State Bar No. 015996)
Direct Dial: 602.262.0216
Direct Fax: 602.734.3859
Email: bsamuels@lrrc.com
**Laura Pasqualone** (State Bar No. 028360)
Direct Dial: 602.262.5362
Direct Fax: 602.734.3778
Email: lpasqualone@lrrc.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Aric Burke and Vaughn Ward, | Case No. |
| Plaintiffs, | **VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |
| v. | |
| USPI Holding Company, Inc., USPI Group Holdings, Inc. and USP Texas LP, | |
| Defendants. | |

Aric Burke and Vaughn Ward (collectively, "Plaintiffs"), for their Verified Complaint against Defendants USPI Holding Company, Inc. ("USPI Holding"), USPI Group Holdings, Inc. ("USPI Group") and USP Texas LP (collectively, "Defendants"), allege as follows:

## **NATURE OF ACTION**

1.      Plaintiffs bring this action and respectfully request a declaratory judgment regarding the unenforceability of restrictive covenants contained within certain stock option agreements between Mr. Burke and USPI Holding and/or USPI Group, and Mr. Ward and USPI Holding, each of which purports to prohibit Plaintiffs for a period of one year following termination of their employment from (a) engaging in activity competitive with USPI Holding and/or USPI Group or any of their subsidiaries anywhere in the world; (b) undertaking any planning for any business competitive or potentially competitive with USPI Holding and/or USPI Group or any of their subsidiaries anywhere in the world, (c)

COMPLAINT

102662289_4

soliciting for employment or hiring any employees or independent contractors of USPI Holding and/or USPI Group or their subsidiaries, regardless of whether Plaintiffs had any contact with the employees or independent contractors while employed with USP Texas, and (d) soliciting or conducting business with customers or vendors of USPI Holding and/or USPI Group or their subsidiaries, regardless of whether Plaintiffs had any contact with the customers or vendors while employed with USP Texas.  Plaintiffs further seek judgment on their claim of tortious interference with Plaintiffs' business relationships and expectancy interests based on Defendants' improper and intentional attempts to prevent Plaintiffs from entering into consulting relationships with existing health systems that do not compete with and have never had relationships with USPI Holding, USPI Group or any of their subsidiaries, in reliance on the unenforceable Restrictive Covenants.  Finally, Plaintiffs seek an injunction in the form of a temporary restraining order, preliminary injunction and permanent injunction prohibiting Defendants from enforcing the Restrictive Covenants.

## THE PARTIES

2.     Upon information and belief, Defendant USPI Group is a Delaware corporation headquartered in Addison, Texas.  Upon further information and belief, USPI Group is a subsidiary of Defendant USPI Holding.

3.     Upon information and belief, USPI Holdings, Inc. is a subsidiary of Defendant USPI Holding.  USPI Holding is a Delaware corporation, but it is headquartered in Texas.

4.     Upon further information and belief, United Surgical Partners International Inc. ("USP International"), which is based in Texas, is a subsidiary of USPI Holdings, Inc.

5.     Upon further information and belief, USP International, the operational entity through which USPI Holding and USPI Group conduct business, has numerous subsidiaries and owns, manages and/or operates short-stay surgical facilities in several cities across the United States as well as in the United Kingdom, employing over 11,000 people.  Upon information and belief, USP International also owns, operates, manages and/or partners in other medical fields, including orthopedics, imaging and urgent care.  Upon further

2

information and belief, USP International operates 266 Ambulatory Surgery Centers ("ASCs") and 194 Outpatient centers in twenty-nine states across the country.

6.     Plaintiff Aric Burke is a resident of Phoenix, Arizona.  From August 2012 to November 1, 2017, Mr. Burke was employed with USP Texas.  Upon information and belief, USP Texas is a subsidiary of USP International. Mr. Burke began his employment with USP Texas as a Regional Vice President, but ended his employment as a Market President, which position he assumed in or about May 2014.

7.     Plaintiff Vaughn Ward is an individual who resides in Phoenix, Arizona and, from July 2014 to November 1, 2017, was employed by USP Texas as a Regional Vice President.

**JURISDICTION AND VENUE**

8.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy is well in excess of the sum or value of $75,000.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because (i) Plaintiffs are Arizona residents; (ii) as employees of USP Texas, Defendants performed a majority of their duties in Arizona, including in Phoenix, Arizona, and executed the restrictive covenants at issue in Phoenix, Arizona; (iii) Defendants conduct business within the State of Arizona and this judicial district; (iv) Defendants' improper conduct is causing Plaintiffs' injury in Arizona, and a substantial part of the events or omissions giving rise to the claims occurred, and continues to occur, in the State of Arizona and in this district.

**FACTUAL BACKGROUND**

10.     During his employment with USP Texas, Mr. Burke's duties included responsibility for the overall operations of USP International-owned or operated surgical facilities in his market territory, referred to as the "West Market."  The West Market included the states of Arizona, Colorado, Nevada, New Mexico and Wyoming; however, USP International only owned or managed surgical facilities within the cities of Phoenix, Tucson, Las Vegas, Denver, Albuquerque and Jackson Hole.  Furthermore, Mr. Burke

3

executed the majority of his duties for facilities in the Phoenix and Tucson areas, where 17 of the total 30 USP International facilities were located within the West territory.

11.     Mr. Ward was responsible for the operation of six USP International-owned or -operated facilities in Phoenix, specifically four ASCs and two surgical hospitals.   He performed all of his work for USP Texas in Maricopa County, Arizona.

12.     During their employment with USP Texas, and while residing in Phoenix, Mr. Burke and Mr. Ward each entered into and signed certain stock option agreements ("Agreements").    These Agreements contained restrictive covenants (the "<u>Restrictive Covenants</u>") with the same or substantially similar limitations, as set forth below:

**Covenant not to Compete.**

(i)     While the [Employee] is employed by the Company [defined as USPI Group Holdings, Inc. or USPI Holding Company, Inc. depending on the Agreement] or an Affiliate and for one year from the later of the Termination Date or the last date on which [Employee] receives a severance payment from the Company (in the aggregate, the "<u>Non Competition Period</u>"), the [Employee] shall not, directly or indirectly, whether as owner, partner, investor, consultant, agent, employee, co-venturer or otherwise (other than through ownership of publicly traded capital stock of a corporation which represents less than 1% of the outstanding capital stock of such corporation), (i) compete with the Company or any subsidiary of the Company in any business activities, in the United States or in any other country, which the Company or any subsidiary[1] of the Company shall conduct or intend to conduct as of the Termination Date, or (ii) undertake any planning for any business competitive with the Company or any of its subsidiaries.  Specifically, without limiting the foregoing, the [Employee] agrees not to engage in any manner in any activity directly or indirectly competitive or potentially

---

[1] The Agreements signed prior to 2015 were entered with USPI Group Holdings, Inc. instead of USPI Holdings Company, Inc., and referenced "Affiliate" instead of the Company's subsidiaries in the Restrictive Covenants.

4

competitive with the business of the Company or any of its subsidiaries as conducted or competitive with the business of the Company or any of its subsidiaries as conducted or under consideration at any time during the [Employee]'s employment with the Company or any of its Affiliates (including prior to the date hereof).

(ii)     [Employee] agrees that, during [Employee]'s employment with the Company or any of its Affiliates, Burke will not undertake any outside activity, whether or not competitive with the business of the Company or its subsidiaries, that could reasonably give risk to a conflict of interest or otherwise interfere with [Employee]'s duties and obligations to the Company or any of its subsidiaries.

**Non-Solicitation.**     [Employee] agrees that while [Employee] is employed by the Company or any of its Affiliates and during the Non-Competition Period, [Employee] will not, directly or indirectly, (i) hire or attempt to hire any employee of the Company or any of its subsidiaries or anyone who was such an employee within the six months preceding such hire or attempt to hire, (ii) hire or attempt to hire any independent contractor providing services to the Company or any of its subsidiaries or anyone who was such an independent contractor within six months preceding such hire or attempt to hire, (iii) assist in hiring or any attempt to hire anyone identified in clause (i) or (ii) of this sentence by any other person, (iv) encourage any employee or independent contractor of the Company or any of its subsidiaries to terminate his relationship with the Company or any of its subsidiaries, or (v) solicit or encourage any customer or vendor of the Company or any of its subsidiaries (including physicians holding clinical privileges at any surgical facility in which the Company has a direct or indirect ownership interest or with which a subsidiary has a management agreement) to terminate or diminish its relationship with any of them, or in the case of a customer, to conduct with

5

1    any person any business or activity which such customer conducts or could

2        conduct with the Company or any of its subsidiaries.

3    True and correct copies of the stock option agreements, containing the covenants purporting

4    to bind Mr.  Burke and Mr. Ward are attached as Exhibits A, and C.

5        13.    On or about October 10, 2017, Plaintiffs informed USP Texas that they desired

6    to resign from their employment and to thereafter perform consulting services to surgical

7    centers owned or operated by existing health systems that do not have, and have never had,

8    actual or contemplated relationships with USPI Holding, USPI Group or any of their

9    subsidiaries.  In fact, USP International maintains an exclusive relationship with Dignity

10   Health in Arizona that would preclude USP International from partnering with other health

11   systems in Arizona.

12       14.    Even though they had no obligation to do so, Plaintiffs offered to continue to

13   work with USP Texas for a one-month notice period to assist in the transition following their

14   resignation.  Mr. Burke assisted Defendants with locating and recruiting his replacement.

15   Mr. Burke's replacement is an existing USPI Market President with over three years of

16   experience in this role and she has been adequately prepared to perform Mr. Burke's former

17   position.

18       15.    Initially, Plaintiffs were told that Defendants would not object to their

19   proposed venture or their provision of services to health systems in which Defendants have

20   no interest, as such services were not viewed by Defendants as being competitive.

21       16.    Specifically, on or about October 18, 2017, Mr. Burke raised the Restrictive

22   Covenants with USPI Chief Operating Officer-West Division, Mark Garvin, to ascertain

23   Defendants' intentions with respect to enforcement of the Restrictive Covenants.  During

24   that conversation, Mr. Burke noted that the language of the Restrictive Covenants is very

25   broad and would essentially prevent Plaintiffs from working for a year anywhere in the

26   industry.  Mr. Garvin quickly acknowledged that the terms of the Restrictive Covenants are

27   too broad and restrictive "by design."   Mr. Garvin agreed that the Restrictive Covenants, as

28   written, are "beyond a reasonable scope."

17.     Mr. Garvin stated that, after speaking with others in the company, he would provide Mr. Burke a letter outlining what actions Defendants would consider permissible, which Mr. Garvin indicated would be based on a letter Defendants had used for another former USPI employee, who had left USPI to work for Hospital Corporation of America "HCA Healthcare," a direct competitor of Defendants.  After leaving USPI, this former employee worked for HCA in the same market she had worked for USPI in Nashville, Tennessee.

18.     Mr. Burke specifically asked whether Plaintiffs could work in Phoenix with non-USPI ASCs and health systems and Mr. Garvin agreed that they could do so as long as Plaintiffs were not competing for Defendants' clients or physicians.  Mr.  Garvin then volunteered that he would not view Plaintiffs' engagement of business with Banner Health or HonorHealth as being directly competitive because Defendants work with Dignity Health, and the other health systems have their own physicians and networks that exclude Defendants.  Mr. Burke asked Mr. Garvin to confirm this and include it in the letter.  Mr. Garvin responded that he would talk with USPI President Brett Brodnax, but that he did not anticipate there being any concerns.  Mr. Garvin indicated that as long as Plaintiffs refrained from recruiting Defendants' physicians, Defendants should have no concerns with Plaintiffs engaging in the venture Plaintiffs proposed.

19.     The following day, on October 19, 2017, however, Mr. Garvin sent Mr. Burke an email stating that Plaintiffs would not be able to work with other health systems or do any work in Phoenix, Arizona.  Mr. Burke asked Defendants to reconsider their position, which was contrary to what Mr. Garvin had told him the previous day.   Mr. Garvin then requested specific information regarding Plaintiffs' plans. A true and correct copy of Mr. Garvin's October 19, 2017 emails are attached as Exhibit C.

20.     That same day, Mr. Burke emailed Mr. Garvin his proposal, which included his request that Plaintiffs be able to work with ASCs and health systems in markets outside of USPI markets, and to work with Banner and Banner's existing ASCs in Phoenix and Tucson. He emphasized his intent to leave on good terms, but reiterated his request that Defendants

be fair and reasonable in allowing Plaintiffs to earn a living.   A true and correct copy of Mr. Burke's October 19, 2017 email is attached as  Exhibit D.

21.    That afternoon, during a phone call with Mr. Burke and Mr. Ward, Mr. Garvin indicated that Defendants would not permit Plaintiffs to work with Banner or work in the industry in Phoenix.  Mr. Burke recounted his conversation with Mr. Garvin from the prior day, referencing Mr. Garvin's assurances that working for Banner or Honor would not be a problem.  Mr. Garvin acknowledged that he had made such statements the prior day, but Mr. Garvin indicated that Dignity was upset about Plaintiffs working for Banner and wanted USPI to enforce the Restrictive Covenants.

22.    On October 29, 2017, Mr. Garvin sent an email to Plaintiffs with a proposed attached agreement, which again reiterated Defendants' insistence that Plaintiffs comply with their Restrictive Covenants with limited modifications.   Among other things, Defendants reiterated their expectation that Plaintiffs refrain from establishing "any Joint venture or any other business relationship with Banner Health or any of its affiliates during the 12-month period following November 10, 2017."  A true and correct copy of Mr. Garvin's October 29, 2017 email to Plaintiffs and proposed Agreement is attached as Exhibit E.

23.    At that point, Defendants began to expand the restrictions they were requesting beyond what they had originally requested.  After Plaintiffs again attempted to negotiate further with Defendants about the unreasonable restrictions Defendants were insisting Plaintiffs comply with, on October 31, 2017, Mr. Garvin sent an email to Plaintiffs stating "I can tell you for a fact that there is very little flexibility, if any at all, with what we have already offered. Remember, we have to protect USPI and all of our partners and uphold our Agreement."

24.    Defendants provide no services for or at any of the proprietary health care system facilities to which Plaintiffs desire to provide consulting services.  Defendants therefore have no legitimate interest in enforcing the Restrictive Covenants with respect to

8

the consulting services Plaintiffs intend to offer.  Nonetheless, Defendants have maintained their refusal to allow Plaintiffs to provide the consulting services as specified.

25.  Plaintiffs have expressed to Defendants their belief that the Restrictive Covenants are unenforceable and that they consequently have the legal right to engage in the contemplated activities without Defendants' approval.  Defendants have expressed their disagreement and continue to maintain that any consulting work by Plaintiffs for existing health systems would violate the Restrictive Covenants.

26.  As outlined above, an immediate case or controversy exists between Plaintiffs and Defendants with respect to whether the Restrictive Covenants are valid and enforceable.

27.  Plaintiffs' inability to begin providing consulting services to the relevant health systems will cause substantial, immediate, and irreparable harm to Plaintiffs' current and prospective business relationships with such health systems.  Because the nature and value of the goodwill that would be damaged and the future contracts and opportunities with these health systems that otherwise would exist are impossible to determine with certainty, the harm Plaintiffs will suffer as a result of Defendants' wrongful conduct cannot be remedied by damages alone.

28.  Furthermore, if the Restrictive Covenants were enforced as drafted, Plaintiffs would be prohibited from competing (or even planning to compete) anywhere in the world, even in countries, states, and cities where Defendants have no existing locations. Enforcement of the Restrictive Covenants would also preclude Plaintiffs from working in or around Phoenix, even if such work does not compete with USP Holding, USPI Group or their subsidiaries.  As a result, Plaintiffs would certainly be required to seek employment elsewhere in a completely different industry, with significant, incalculable and damaging financial ramifications, and possibly forcing Plaintiffs to move away from Phoenix.  Thus, Defendants' attempt to enforce invalid and unenforceable restrictions and to keep Plaintiffs from competing in the United States or anywhere USP Holding, USPI Group or their subsidiaries conduct or intend to conduct any kind of business, including business beyond that in which Plaintiffs provided services for USP Texas, will substantially harm Plaintiffs.

9

**COUNT ONE**

**(Declaratory Judgment that the Restrictive Covenants are Unenforceable)**

29.    Plaintiffs incorporate by reference paragraphs 1 through 28 above as if fully set forth herein.

30.    This is a claim for declaratory relief brought against USPI pursuant to the provisions 28 U.S.C. § 2201, which empowers this Court to declare the rights and legal relations of the parties.  These provisions are to be liberally construed and administered.

31.    An actual case or controversy exists concerning Plaintiffs' Restrictive Covenants, which cannot be cured without the intervention of this Court.

32.    Section (a) of the Restrictive Covenants seeks to prevent Plaintiffs from competing, or "undertak[ing] any planning" to compete, anywhere in the world with USPI Holding and/or USPI Group or any of their subsidiaries.

33.    These restrictions are overly broad with respect to scope and territory, which, as drafted, extends to "the United States or in any other country[.]"  Such a broad restriction is not reasonable or necessary to protect any legitimate interest Defendants may have in precluding competition by Plaintiffs, because Plaintiffs did not service the entire United States, much less the entire world, while employed by USP Texas.  Moreover, Defendants do not transact business or maintain locations in every city, state or country, and thus a worldwide restriction is overly broad and unreasonable.

34.    The Restrictive Covenants also are overly broad to the extent they purport to restrict Plaintiffs in every actual or contemplated business activity of USPI Holding, USPI Group and their subsidiaries, despite the fact that Plaintiffs have never worked with or gained knowledge about any lines of business or services of any entity except USP Texas, nor have they developed goodwill with customers of any entity other than USP Texas in very limited areas, nor have Plaintiffs provided services while employed by USP Texas outside the surgical services industry.

35.    The restrictions also impermissibly attempt to prohibit Plaintiffs from so much as "planning" to compete with USPI Holding, USPI Group or any of their subsidiaries.  This

10

restriction is unenforceable because it is vague and ambiguous, overly broad on its face, and has the effect of unfairly extending the term of the covenant beyond a reasonable temporal limit and geography.  Moreover, Defendants do not have a legitimate protectable interest in precluding Plaintiffs from planning or preparing to compete, as such activities are lawful.

36.     Section (b) of the Restrictive Covenants seeks to prevent Plaintiffs from hiring or attempting to hire any employee or independent contractor of USPI Holding, USPI Group or any of their subsidiaries if the individual was an employee within the last six months prior to the hire, or to encourage any such employee or independent contractor to terminate his or her relationship with USPI Holding, USPI Group or their subsidiaries.  Section (b) also seeks to prohibit Plaintiffs from soliciting any customer or vendor of USPI Holding, USPI Group or their subsidiaries to terminate their relationships, and to prohibit Plaintiffs from conducting any business with any customer of USPI Holding, USPI Group or any of their subsidiaries, if such business is competitive with USPI Holdings, USPI Group or any of their subsidiaries.

37.     The  employee/independent  contractor  non-solicitation  agreement  is unenforceable  and  overly  broad,  because  Defendants  have  no  legitimate  interest  in preventing employees or independent contractors from leaving their workforce, which is ordinary competition, and because such restrictions are anticompetitive and impose an undue burden on employees, contractors, and vendors who have not signed restrictive covenants. Furthermore, Plaintiffs have had no contact and developed no goodwill with the vast majority of individuals employed by or who have contracted with USPI Holding, USPI Group or their subsidiaries, and USPI Holding, USPI Group or their subsidiaries therefore have no legitimate interest in preventing Plaintiffs from hiring or soliciting such employees. In addition, the restriction applies to employees and independent contractors who may no longer have any ongoing relationship with USPI Holding, USPI Group or their subsidiaries; therefore, it is overbroad and unenforceable.  Finally, the restriction prevents Plaintiffs from hiring any employees or contractors, regardless of whether Plaintiffs actually recruit or solicit the employees or contractors, which is also overly broad and unenforceable.

38.     The customer non-solicitation provision is also overly broad, because it prevents Plaintiffs from soliciting or providing services to any customers of USPI Holding, USPI Group or their subsidiaries, and it is not limited to only those customers with whom Plaintiffs have worked or developed goodwill, or about whom Plaintiffs had confidential information.  Defendants have no legitimate interest in preventing Plaintiffs from working with customers who were are unknown to Plaintiffs and/or who are customers of USPI Holding, USPI Group or their subsidiaries, especially those who are customers in lines of business beyond the industry in which Plaintiffs were employed.

39.     In addition to the fact that the Restrictive Covenants are overbroad on their face, it is significant that Plaintiffs have specifically informed Defendants of their desire to provide consulting services only to those health system networks with which Defendants have no relationship.  Defendants have no contract, prospective contract or reasonable expectancy of providing any services to the patients or facilities within such networks.  As a result, Defendants have no legitimate business interest to protect and thus no legal justification for enforcing the Restrictive Covenants to prevent Plaintiffs from providing consulting services as desired by Plaintiffs.

40.     Finally, while the Agreement contains a Delaware choice of law provision, that choice of law provision is unenforceable because, among other things, Delaware has no substantial relationship to the parties or the transactions at issue, there is no other reasonable basis for the application of Delaware law, and application of Delaware law would be contrary to a fundamental policy of Arizona, which has a materially greater interest than Delaware in the determination of the dispute.

41.     Plaintiffs, therefore, are entitled to a declaratory judgment that the Restrictive Covenants are invalid and unenforceable under Arizona law.

## COUNT TWO

### (Tortious Interference With Business Expectancy)

42.     Plaintiffs incorporate by reference paragraphs 1 through 41 above as if fully set forth herein.

43.     Plaintiffs desire to provide consulting services to certain health systems, which will not require Plaintiffs to engage in any unfair competition as to clients served or goodwill developed while Plaintiffs were employed at USP Texas.  Defendants are aware of Plaintiffs' expectancy interests with such health systems.

44.     With actual knowledge of Plaintiffs' relationship and business expectancy with the relevant health systems, Defendants have interfered with this relationship and expectancy by, among other things, asserting that Plaintiffs are precluded from providing consulting services in the limited and fair manner outlined above, due to the Restrictive Covenants, which are unenforceable.

45.     Defendants' intentional interference with Plaintiffs' business relationship and expectancy interest is neither proper nor privileged, because Defendants have no legitimate interest in preventing Plaintiffs from providing consulting services with respect to those health systems with which Defendants have no relationship or goodwill and to whom Defendants have no expectation of providing services.

46.     Defendants' actions are intended to interfere with, and have in fact interfered with and disrupted, Plaintiffs' business relationships and expectancies with the relevant health systems.

47.     As a direct, proximate, and legal result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer immediate irreparable harm.

## COUNT THREE

### (Injunction Prohibiting Enforcement of the Restrictive Covenants)

48.     Plaintiffs incorporate by reference paragraphs 1 through 47 above as if fully set forth herein.

49.     Because the Restrictive Covenants are overly broad and unenforceable for multiple reasons, and because Defendants have no legitimate business interest to protect, and thus no legal justification for enforcing the Restrictive Covenants as drafted, Plaintiffs are likely to succeed on the merits in their request for a declaration that the Restrictive Covenants are unenforceable and on their tortious interference claim.

13

50.     If an injunction in the form of a temporary restraining order, preliminary injunction, and permanent injunction does not issue, Plaintiffs will be unable to expeditiously provide consulting services to certain health systems, as they have agreed to do.   This inability to provide services will cause immediate and irreparable harm to Plaintiffs' goodwill with those health systems and Plaintiffs' actual and expected continuation of their business relationship with those health systems.

51.     Defendants do not have and have never had any contract, prospective contract or expectancy in working with or providing services to existing health systems that have no current relationship with Defendants, and which Defendants are precluded from contracting or servicing due to their exclusive relationship with Dignity Health.   As a result, an injunction in the form of a temporary restraining order, preliminary injunction, and permanent injunction prohibiting enforcement of the Restrictive Covenants, and immediately allowing Plaintiffs to enter into contracts with the health systems, will cause no damage to Defendants and will not harm Defendants in any other meaningful way.

52.     If an injunction does not issue and Plaintiffs are prevented from providing consulting services to the relevant health systems pursuant to the overly broad terms of the Restrictive Covenants, Plaintiffs would be forced to relocate outside of Phoenix in order to obtain employment and/or to abandon the industry in which they have historically earned their living.   Furthermore, Plaintiffs may be entirely unable to work in their chosen profession if they are unable to work anywhere in the United States and/or where USPI Holding, UPSI Group or any of their subsidiaries conduct business or even plan to conduct business.   This result would cause significant and irreparable harm to Plaintiffs, who cannot be entirely precluded from earning a living in their chosen field, especially when Defendants have no legitimate interest in preventing Plaintiffs from engaging in the proposed work.

53.     The foregoing factors favor Plaintiffs and entry of an injunction in the form of a temporary restraining order, preliminary injunction, and/or permanent injunction; therefore, Defendants should be enjoined from seeking to enforce the Restrictive Covenants.

54.    Plaintiffs' request for injunctive relief should be granted without any requirement to post a bond in light of the fact that Defendants do not have and have never had any contract, relationship or expectancy with the relevant health systems, and therefore will suffer no harm upon entry of an injunction.  To the extent the Court determines a bond is necessary, only a nominal bond should be required.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request judgment against Defendants as follows:

1.    A declaratory judgment that the Restrictive Covenants are unenforceable;

2.    A temporary restraining order, preliminary and permanent injunction prohibiting Defendants from seeking to enforce the Restrictive Covenants;

3.    For general, incidental, and consequential damages against Defendants in an amount to be proven at trial;

4.    For attorneys' fees pursuant to A.R.S. § 12-341.01(A) and costs incurred; and

5.    For such other relief as the Court deems appropriate.

DATED this 1st day of November, 2017.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

BY:    */s/ Mary Ellen Simonson*
Mary Ellen Simonson
Bruce E. Samuels
Laura Pasqualone
*Attorneys for Plaintiffs*

15

## VERIFICATION

Aric Burke, being first duly sworn upon oath, deposes and says:

I, Aric Burke, being first duly sworn upon oath, deposes and says:

1.     I am one of the plaintiffs in the above-captioned action.

2.     I have read the foregoing Verified Complaint for Declaratory Judgment and Injunctive Relief and know the contents thereof.

3.     All of the allegations contained therein are true to the best of my knowledge, except those matters alleged on information and belief, which I believe to be true.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 1ˢᵗ day of November, 2017.

_____
                        Aric Burke

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFICATION

Vaughn Ward, being first duly sworn upon oath, deposes and says:

1.     I am one of the plaintiffs in the above-captioned action.

2.     I have read the foregoing Verified Complaint for Declaratory Judgment and Injunctive Relief and know the contents thereof.

3.     All of the allegations contained therein are true to the best of my knowledge, except those matters alleged on information and belief, which I believe to be true.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this _1st_ day of November, 2017.

Vaughn Ward

COMPLAINT

102662289_4